# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| RAMONA SUTTON, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No._____ |
| | ) | **JURY DEMANDED** |
| WILSON COUNTY GOVERNMENT and | ) | |
| DEBBIE MOSS, individually and in her | ) | |
| official capacity as the Wilson County Circuit | ) | |
| Court Clerk. | ) | |
| | ) | |
|     Defendants. | ) | |

## COMPLAINT

Plaintiff, Ramona Sutton, for her cause of action against Defendants respectfully states as follows:

### INTRODUCTION

1.  This case arises following the sitting Circuit Court Clerk for Wilson County, Tennessee terminating her opponent in the primary election's employment the day after the primary election concluded. The primary election occurred on May 5, 2026. Defendant Moss defeated Plaintiff for another term as Circuit Court Clerk. Within mere minutes of the work day beginning on May 6, 2026, the Plaintiff in this case was terminated from her position as Deputy Court Clerk – a position she had held without issue since July 13, 2015. Plaintiff was merely exercising her statutory right to run for office and was terminated for that reason alone. Plaintiff's termination is contrary to public policy, violates the First Amendment to the United States

Case 3:26-cv-00926    Document 1    Filed 07/06/26    Page 1 of 12 PageID #: 1

Constitution, and constitutes a wrongful retaliatory termination for which the Defendants are liable.

## PARTIES

2. Plaintiff, Ramona Sutton, is a citizen and resident of Mount Juliet, Tennessee.

3. That Defendant Wilson County Government is a metropolitan government organized under the laws of the State of Tennessee and may be served with process at the Office of the County Mayor, Randall Hutto, 228 E Main Street, Lebanon, TN 37087.

4. That Defendant Debbie Moss is the Circuit Court Clerk for Wilson County, Tennessee, and may be served with process at her office located at 115 E. High Street, Lebanon, TN 37087. That in her position as Circuit Court Clerk, Defendant Moss also managed the General Sessions Court of Wilson County, Tennessee. Moss is sued in her individual and official capacities.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the Plaintiff's federal claims in this civil action pursuant to 28 U.S.C. § 1331.

6. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

7. Venue is also proper in this Court pursuant to 28 U.S.C. § 1391 as all defendants reside in this district and a substantial part of the event giving rise to the claim occurred in this district.

## FACTS

8. Plaintiff Ramona Sutton began her employment with Wilson County Government in the Circuit Court Clerk's Office in Wilson County, Tennessee, as a part-time employee in approximately March or April 2015, working primarily in criminal and juvenile matters.

9. On July 13, 2015, Ms. Sutton was promoted to full-time Deputy Clerk and transferred to the General Sessions' office. This position was not a policymaking or confidential position. *Elrod v. Burns,* 427 U.S. 347 (1976)*; Branti v. Finkel,* 445 U.S. 507 (1980).

10. Throughout her employment, Ms. Sutton performed a wide range of responsible duties as a Deputy Clerk, including preparing jail dockets, managing court dockets, entering warrants and citations into the TNCIS system, issuing subpoenas, handling bound-over cases, public defender appointments, filing and maintaining physical case files (pending, completed, to-pay, FTA/FTB, etc.), and providing direct courtroom support to the Judge and other staff. Plaintiff routinely arrived early (by 6:30 a.m.) to prepare materials without seeking additional compensation.

11. Due to her experience in criminal matters, Ms. Sutton was occasionally pulled from General Sessions duties to assist in the criminal division when needed. Beginning in approximately 2018, Ms. Sutton worked primarily in General Sessions Court and continued in that role until her termination.

12. On or about Wednesday, December 31, 2025, Defendant Debbie Moss, the Clerk, approached Plaintiff at work and asked her to sign a petition supporting Defendant Moss's candidacy for Clerk.

13. Ms. Sutton respectfully informed Defendant Moss that she could not sign the petition because she was considering filing her own petition to run for the same office.

14. Ms. Sutton made this disclosure out of respect and to avoid Defendant Moss hearing the information through rumors or third parties.

15. Ms. Sutton stated she would make a final decision by Friday January 2, 2026, to which Defendant Moss did not respond verbally and left the area.

16.     Ultimately, Ms. Sutton did decide to run for the Circuit Court Clerk position and submitted the necessary documents to establish her candidacy and appear on the primary ballot in May.

17.     On January 2, 2026, Defendant Moss stated to co-workers "she may have more money but I will win" and then went on to say, "I wish she would just quit so I do not have to let her go."

18.     After Ms. Sutton submitted the relevant paperwork, Defendant Moss stopped speaking to her, isolated her and created a hostile work environment to where coworkers were afraid to speak to Ms. Sutton for fear of retaliation.

19.     Shortly after Ms. Sutton's candidacy was confirmed, rumors that Defendant Moss would terminate Plaintiff if Defendant Moss won the primary made their way back to Ms. Sutton. In fact, many people in the Circuit Cout Clerk's office and deputies with the Wilson County Sheriff's Department approached Ms. Sutton about hearing this rumor, which became common knowledge.

20.     As a result, Ms. Sutton decided to consult Holly Stockton in the County's Human Resources department about how, if at all, a termination could impact retirement eligibility and associated benefits.

21.     When Ms. Sutton informed Ms. Stockton of the reason for her inquiry, i.e. Defendant Moss would terminate her if she won the primary election, Ms. Stockton dismissed this possibility as not likely and responded with, "[y]ou do not think she will really do that do you?"

22.     Ms. Sutton was advised that once she selected a retirement date, that it could be rescinded at any time before the selected date. As a result, Ms. Sutton tentatively set September 1, 2026 as her retirement date to protect her retirement benefits due to her belief that Defendant Moss

would terminate her employment if Defendant Moss won the primary. September 1 was selected as that is the day Defendant Moss would be sworn in for her new term should she win the General Election in August. Ms. Sutton believed this would be the date she was terminated.

23. On April 10, 2026, Defendant Moss went on a local radio show broadcast on 98.9 FM to campaign for the Circuit Court Clerk position. In that interview, Defendant Moss was asked about her primary challenger and responded with she (Plaintiff) is "trying to take my livelihood." Defendant Moss also said that Plaintiff's continued employment in the Clerk's office has created a "tense" atmosphere in the Clerk's office.

24. Upon information and belief, Defendant Moss took inventory of who expressed support for Ms. Sutton's campaign and even had people report to her on employees that had Plaintiff's campaign signs in their yard.

25. On May 5, 2026, Defendant Moss was announced as the winner of the primary election for the Circuit Court Clerk and would, in fact, be the Republican nominee for the position in the County's General Election on August 6, 2026. Ms. Sutton texted Defendant Moss that night to congratulate her on winning, to which Defendant Moss did not respond.

26. Despite believing her livelihood was at stake in this primary election, Defendant had no problems taking away Ms. Sutton's livelihood. On May 6, 2026 – the day after the primary results were announced at approximately 9:00 p.m. – Ms. Sutton started her workday at 8:00 a.m. and at 8:15 a.m. she was told that Defendant Moss needed to meet with her and she was to wait in Defendant Moss's office.

27. Approximately three to four minutes later, Defendant Moss came into this meeting and stated: "Well, got a situation, and I am going to have to let you go for insubordination and bulling. Aint got nothing to do with yesterday at all."

28.     Defendant Moss then proceeded to reference an event that occurred in October of 2025 where Plaintiff was not written up, counseled, or disciplined in any way.

29.     Defendant Moss then stated her decision to terminate for this issue in October of 2025 was made the day after the election because she "looked up the T.C.A. and it really did not want me to do anything after you picked up the petition. I was trying to follow the T.C.A."

30.     Defendant Moss further went on to say "but you had opportunities to……..not do it" as she was referring to Ms. Sutton's decision to run for the Circuit Court Clerk position.

31.     Ms. Sutton then packed up her possessions and was escorted out of the building. Upon being escorted out of the building, Deputy Matt Bush told Ms. Sutton, "I hate this. I knew this was going to happen."

32.     Defendant Moss made it known that she intended to fire two other employees that day, both who supported Plaintiff in the election. Defendant Moss was ultimately talked out of that decision by Kim Stewart as firing these two employees would have created a big problem in the criminal division of the General Sessions Court, as both employees worked in the courtroom and there was no one in the clerk's office to replace them if fired.

33.     Later that day Ms. Sutton contacted Holly Stockton in HR to inquire about how the termination would impact insurance coverage with the September 1 retirement date. Ms. Stockton was out of the office but called Ms. Sutton from her personal cell phone and stated, "I can't believe she really fired you this quick!" Ms. Stockton then advised Ms. Sutton that her retirement date could be moved up to May 7, 2026 for continued benefits due to the termination in which Ms. Sutton agreed to the earlier date.

34.     There is no question that Ms. Sutton's termination was retaliatory for her decision to run for the Circuit Court Clerk position.

35.     It is unclear why, as Defendant Moss stated, the T.C.A. would require her to hold off on terminating Ms. Sutton until the day after the election for an incident that occurred in October of 2025 as alleged when the incident occurred more than two months *before* Ms. Sutton decided to run for the position. The alleged incident also occurred before Defendant Moss sought Ms. Sutton's support and signature on Defendant Moss's own petition for the Circuit Court Clerk position.

36.     If Defendant Moss's basis of insubordination for Ms. Sutton's termination was in any way legitimate, the Wilson County Government Employee Handbook, in effect at the time of all events set forth in this Complaint, would have resulted in dismissal upon the first offense. The Handbook categorizes insubordination as a Group 3 offense where the first offense results in dismissal. Instead, nothing happened regarding the alleged incident in October of 2025 because Defendant Moss knew that there was no bullying and nothing inappropriate, let alone insubordinate, had occurred.

37.     The basis used to support Ms. Sutton's termination is pretextual as it follows neither logic, law nor workplace rule.

38.     Ms. Sutton's decision to run for Circuit Court Clerk constituted protected political speech and association under the First Amendment.

39.     Ms. Sutton announced her interest to Defendant Moss out of respect. Defendant Moss responded with hostility, including ceasing communication, creating a hostile work environment, and publicly criticizing Ms. Sutton.

40.     Defendant Moss admitted waiting until after the election and referenced the candidacy as the trigger. The stated reasons (insubordination/bullying for an October 2025 incident) were pretextual: the incident was never disciplined, occurred before candidacy, and

violated the County handbook's progressive discipline policy. Defendant Moss also targeted other supporters of Ms. Sutton's candidacy which clearly shows the retaliatory intent.

41. As the elected Circuit Court Clerk, Defendant Moss is the final policymaker for personnel decisions, including hiring, supervision, and termination of deputy clerks in her office under Tennessee law. Her actions constitute official county policy.

42. Wilson County is liable because the termination was caused by the decision of its final policymaker (Moss) acting in her official capacity.

## CAUSES OF ACTION

COUNT I: First Amendment Retaliation – 42 U.S.C. § 1983 (Against All Defendants)

43. Plaintiff realleges and incorporates by reference the allegations in paragraphs 1–42 as if fully set forth herein.

44. Plaintiff engaged in constitutionally protected activity by announcing and running for the elective office of Wilson Count Circuit Court Clerk, which constitutes core political speech and association on a matter of public concern.

45. Defendants took adverse employment actions against Plaintiff, including termination and creation of a hostile work environment.

46. Plaintiff's protected activity was a substantial or motivating factor in the adverse actions, as evidenced by temporal proximity, Defendant Moss's statements, pretext, and differential treatment.

47. Wilson County is liable because Defendant Moss is a final policymaker whose decision represents official Wilson County policy.

48. Defendants' conduct violated Plaintiff's rights under the First and Fourteenth Amendments. Plaintiff is entitled to damages, injunctive relief, attorney fees, and costs.

COUNT II: Violation of Tennessee Political Rights Statute, T.C.A. § 7-51-1501 (Against All Defendants)

49.     Plaintiff realleges and incorporates by reference the allegations in paragraphs 1–48 as if fully set forth herein.

50.     Plaintiff engaged in activity protected by T.C.A. § 7-51-1501 by announcing her candidacy and running for the elective office of Wilson County Circuit Court Clerk. This statute guarantees local government employees the same rights as other citizens of Tennessee to be a candidate for local political office and to participate in political activities.

51.     Defendants took adverse employment actions against Plaintiff, including creating a hostile work environment, isolating her, and ultimately terminating her employment.

52.     Plaintiff's protected political activity was a substantial or motivating factor in the adverse actions, as evidenced by temporal proximity (termination the day after the primary), Defendant Moss's statements referencing the candidacy and T.C.A., pretextual reasons for termination, and targeting of Plaintiff's supporters.

53.     As the final policymaker for personnel decisions in the Circuit Court Clerk's office, Defendant Moss's actions constitute official policy of Wilson County Government.

54.     Defendant Wilson County Government is liable for the actions of its agents in this instance and Defendant Moss's conduct is imputed to Defendant Wilson County Government under the doctrine of respondeat superior.

55.     Defendants' conduct violated Plaintiff's rights under T.C.A. § 7-51-1501. Plaintiff is entitled to damages, injunctive relief including reinstatement, attorney fees, and costs.

<u>COUNT III: Intentional Infliction of Emotional Distress (Against Defendant Moss, Individually)</u>

56.     Plaintiff realleges and incorporates by reference the allegations in paragraphs 1–55 as if fully set forth herein.

57.     Defendant Debbie Moss engaged in extreme and outrageous conduct by creating a hostile work environment, isolating Plaintiff, publicly criticizing her, and terminating Plaintiff's long-standing employment the day after Plaintiff exercised her right to run against Defendant Moss in the primary election. Defendant Moss's actions were motivated by personal and political animus and contrary to Tennessee law.

58.     Defendant Moss's conduct was intentional or reckless and went beyond all bounds of decency tolerated in a civilized society.

59.     As a direct and proximate result of Defendant Moss's extreme and outrageous conduct, Plaintiff has suffered severe emotional distress, mental anguish, humiliation, embarrassment, and other non-economic damages.

60.     Plaintiff is entitled to compensatory and punitive damages from Defendant Moss for intentional infliction of emotional distress.

<u>COUNT IV: Tortious Interreference with Employment Relationship (Against Defendant Moss, Individually)</u>

61.     Plaintiff realleges and incorporates by reference the allegations in paragraphs 1–60 as if fully set forth herein.

62.     At all times relevant hereto, Plaintiff maintained a valid employment relationship with Wilson County Government.

63.     Defendant Moss knew of Plaintiff's employment relationship.

64. Defendant Moss intentionally and improperly interfered with that relationship by terminating Plaintiff's employment for the sole reason that Plaintiff chose to exercise her protected right to run for public office against Moss.

65. Defendant Moss's interference was motivated by improper personal and political animus, as demonstrated by her statements, the timing of the termination, pretextual reasons given, and targeting of Plaintiff's supporters.

66. As a direct and proximate result of Defendant Moss's tortious interference, Plaintiff suffered damages including loss of wages, benefits, emotional distress, and other harms.

67. If the record in this case ultimately demonstrates that Defendant Moss was not acting in furtherance of Wilson Count Government's interest by terminating Plaintiff's employment, then Plaintiff is entitled to compensatory and punitive damages from Defendant Moss for this cause of action.

**WHEREFORE, PREMISES CONSIDERED**, the Plaintiff prays as follows:

A. That process issue and that the Defendants be required to answer this complaint within the time provided by the law;

B. That Plaintiff be awarded compensatory damages, including back pay, front pay, lost wages and benefits (including but not limited to salary, PTO, holidays, 401(k), RAP, HSA, medical, dental, and vision insurance), emotional distress, and mental anguish damages in an amount to be determined at trial;

C. That Plaintiff be awarded punitive damages in an amount equal to three times the amount of compensatory damages awarded;

D. That Plaintiff be awarded her reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988 and other applicable law;

E.      That Wilson County Government be ordered to reinstate Ms. Sutton with full seniority and benefits and to clear any negative reports on her employment record relating to Ms. Sutton' s termination;

F.      That all costs be taxed to the Defendants;

G.      That Plaintiff be awarded pre- and post-judgment interest at the maximum lawful rate; and

H.      That this Court provide Plaintiff with such other legal and equitable relief as the Court deems appropriate.

Respectfully submitted,

THE LAW OFFICES OF CHRISTOPHER EADS, PLLC

By:___*/s/ Christopher Eads*_____
    Christopher Eads, BPR #034589
    1400 N Mount Juliet Rd, Suite 206
    Mount Juliet, TN  37122
    Telephone:   (615) 622-6060
    Facsimile:   (615) 541-2481
    Email: cre@chriseadslegal.com
    *Attorney for Plaintiff*

Page 12 of 12